# EXHIBIT 1

1  Zachary T. Timm (SBN 316564)
   zach.timm@klgates.com
2  **K&L GATES LLP**
   10100 Santa Monica Boulevard
3  Seventh Floor
   Los Angeles, California 90067
4  Telephone: 310.552.5000
   Facsimile: 310.552.5001

5

6  Beth W. Petronio, *admitted pro hac vice*
   beth.petronio@klgates.com
   **K&L GATES LLP**
7  1717 Main Street, Suite 2800
   Dallas, TX 75201
8  Telephone: (214) 939-5815
   Facsimile: (214) 939-5849

9

10 Attorneys for Defendant
   Tyler Technologies, Inc.

11

12 

**UNITED STATES DISTRICT COURT**

13 **CENTRAL DISTRICT OF CALIFORNIA – CENTRAL DIVISION**

| | |
|---|---|
| 13  LENORE ALBERT, JAMES OCON, RYAN MCMAHON, LARRY TRAN, THERESA MARASCO; CHAD PRATT; AND LESLIE WESTMORELAND | Case No. 8:24-cv-01997-WLH-DFM [Assigned to the Hon. Wesley L. Hsu] |

14
15
16

Plaintiffs,

17

v.

18

TYLER TECHNOLOGIES, INC.,
19 STATE BAR OF CALIFORNIA;
RICK RANKIN, STEVE MAZER,
20 LEAH WILSON, RUBEN DURAN
SHERRELL MCFARLANE;
21 KATHERINE KINSEY, BENSON
HOM, CINDY CHAN, SUZANNE
22 GRANT, and DOES 1-50,
inclusive,

23

Defendants.

24

**TYLER TECHNOLOGIES, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT**

*[Concurrently filed with Declaration of Beth Petronio; Declaration of Zachary Timm; and [Proposed] Order]*

Complaint Filed: September 16, 2024

Hearing Date:    December 20, 2024
Time:            1:30 p.m.
Courtroom:       9B

25

26

27

28

---

DEFENDANT TYLER TECHNOLOGIES INC.'S NOTICE OF MOTION AND
MOTION TO DISMISS FIRST AMENDED COMPLAINT

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 20, 2024, at 1:30 p.m. or as soon thereafter as the matter may be heard in Courtroom 9B of the above-captioned Court, located at 350 W. 1st Street, Los Angeles, California 90012 Defendant Tyler Technologies, Inc. ("Tyler") will and hereby does move to dismiss Plaintiffs' First Amended Complaint (the "FAC"), with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion").

This Motion is made on the grounds that the Plaintiffs have failed to state any claim against Tyler upon which relief can be granted. Because no facts exist that can be added to an amended Complaint, dismissal should be with prejudice.

This motion is made following the conferences of counsel for Plaintiffs, Tyler, and certain of the State Bar of California defendants pursuant to Local Rule 7-3, which took place on November 12, 2024. (Petronio Decl., ¶ 10.)[1] Tyler, by and through its counsel, explained the basis for this Motion, including the grounds upon with relief is sought, but Plaintiffs would not agree to dismiss Tyler with prejudice. Accordingly, the Parties have reached an impasse, requiring Tyler to bring the instant Motion. Tyler is informed and believes that Plaintiffs intend to oppose this Motion.

This Motion is based upon this Notice, the attached Memorandum of Points and Authorities and supporting declaration of Beth W. Petronio, declaration of Zachary T. Timm, the FAC, any Reply brief that Tyler may file, argument and evidence that may be presented to the Court prior to or at the Hearing on this Motion, the complete files and records in this action, and such other and further matters as the Court may deem just and proper to consider this Motion.

---

[1] The claims against Tyler in the FAC were also included in the Plaintiffs' initial Complaint. The Parties met and conferred on October 22 and 29, 2024 with respect to those claims. (Petronio Decl., ¶ 6; Timm Decl., ¶ 3.)

1

## K&L GATES LLP

2

3    Dated:  November 18, 2024     By:     */s/ Zachary T. Timm*

4                                              Beth W. Petronio (admitted *pro hac vice*)

5                                              Zachary T. Timm

6                                              Attorneys for Defendant
       TYLER TECHNOLOGIES, INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT TYLER TECHNOLOGIES INC.'S NOTICE OF MOTION AND
MOTION TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

II.   INTRODUCTION ....................................................................................... 1

III.  FACTUAL BACKGROUND ..................................................................... 3

IV.   ARGUMENT ............................................................................................ 5
      A.    The SAC Fails to Satisfy the Requirements of Rule 8 ............................ 5
      B.    The Plaintiffs Fail to Properly Allege Any Claim Against Tyler ............ 7
            i.    Ms. Albert's Data Breach Claim ..................................... 7
            ii.   Plaintiffs' Interference With Prospective Economic
                  Advantage Claims Also Warrant Dismissal. ............................... 10

V.    CONCLUSION ....................................................................................... 18

1

**TABLE OF AUTHORITIES**

2

**Cases**

3

*Adams v. Johnson,*
   355 F.3d 1179 (9th Cir. 2004) .................................................................. 7

4

*Apple Computer, Inc. v. Superior Ct.,*

5

   126 Cal. App. 4th 1253 (2005) ............................................................... 8

6

*Batzel v. Smith,*
   333 F.3d 1018 (9th Cir. 2003) ............................................................... 14

7

*Bell Atl. Corp. v. Twombly,*

8

   550 U.S. 544 (2007) ........................................................................... 6, 7

9

*Cafasso v. Gen. Dynamics C4 Sys., Inc.,*
   637 F.3d 1047 (9th Cir. 2011) ............................................................... 6

10

*California Coal. for Fams. & Child. v. San Diego Cnty. Bar Ass'n,*

11

   657 F. App'x 675 (9th Cir. 2016) ........................................................... 5

12

*Canilao v. City Com. Invs., LLC,*
   613 F. Supp. 3d 1236 (N.D. Cal. 2022) ................................................. 14

13

*Corales v. Bennet,*

14

   567 F.3d 554 (9th Cir. 2009) .................................................................. 7

15

*Corona v. Sony Pictures Entertainment, Inc.,*
   No. 14-CV-09600-RGK, 2015 WL 3916744 (C.D. Cal., June 15, 2015) ............. 9

16

*Coto Settlement v. Eisenberg,*

17

   593 F.3d 1031 (9th Cir. 2010) ............................................................... 4

18

*Crown, Cork & Seal Co., Inc. v. Parker,*
   462 U.S. 345 (1983) ............................................................................. 8

19

*Danielson v. ITT Industrial Credit Co.,*

20

   199 Cal. App. 3d 645 (1988) ................................................................. 9

21

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.,*
   11 Cal.4th 376 (1995) ......................................................................... 11

22

*E–Fab, Inc. v. Accountants, Inc. Services,*

23

   153 Cal. App. 4th 1308 (2007) ............................................................... 8

24

*Fayer v. Vaughn,*
   649 F.3d 1061 (9th Cir. 2011) ............................................................... 7

25

*Fields v. Napa Milling Co.,*

26

   164 Cal. App. 2d 442 (1958) ................................................................. 9

27

*Garlock Sealing Technologies LLC v. NAK Sealing Technologies Corp.,*
   148 Cal. App. 4th 937 (2007) ............................................................... 14

28

*Golden Eagle Land Inv., L.P. v. Rancho Santa Fe Assn.*,
   19 Cal. App. 5th 399 (2018) ................................................................ 11, 15

*Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*,
   2005 WL 832398 (N.D. Cal. Mar. 30, 2005) ........................................ 16

*Holly v. Alta Newport Hosp., Inc.*,
   No. 2:19-cv-07496-ODW (MRWx),
   2020 WL 1853308 (C.D. Cal. Apr. 10, 2020) ........................................ 10

*Imageline, Inc. v. CafePress.com, Inc.*,
   No. CV 10-9794 PSG MANX, 2011 WL 1322525 (C.D. Cal. Apr. 6, 2011) .......... 14

*Jordache Enters., Inc. v. Brobeck, Pheger & Harrison*,
   18 Cal.4th 739 (1998) ............................................................................ 9

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal.4th 1134 (2003) .......................................................................... 11

*Martinez v. Citimortgage, Inc.*, No. CV15-9737 PSG (MRWX),
   2016 WL 7469867 (C.D. Cal. May 19, 2016) ........................................ 8

*McGarry v. Sax*,
   158 Cal. App. 4th 983 (2008) ................................................................ 8

*McHenry v. Renne*,
   84 F.3d 1172 (9th Cir.1996) .................................................................. 6

*Nevijel v. North Coast Life Ins. Co.*,
   651 F.2d 671 (9th Cir. 1981) ................................................................. 6

*Nolan Miller Incorporation v. Hees*,
   No. 2:17-CV-07355-ODW-PLA, 2018 WL 3533392 (C.D. Cal. July 20, 2018) ..... 12

*Quelimane Company, Inc. v. Stewart Title Guaranty Company*,
   19 Cal.4th 26 (1998) .............................................................................. 11

*Rheumatology Diagnostics Lab, Inc. v. Aetna, Inc.*,
   12-cv-05847-WHO, 2014 WL 524076 (N.D. Cal. Feb. 6, 2014) .............. 16, 17

*Santa Fe Properties, LP v. Source Bioscience, Inc.*,
   No. CV2010727JFWPVCX, 2021 WL 6104156 (C.D. Cal. Feb. 10, 2021) ......... 15

*see also Blank v. Kirwan*,
   39 Cal.3d 311 (1985) ............................................................................. 16

*Shah v. Glendale Fed. Bank*,
   44 Cal. App. 4th 1371 (1996) ................................................................ 9

*Shorr v. Kind*,
   1 Cal. App. 4th 249 (1991) .................................................................... 9

*Sonora Diamond Corp. v. Superior Court*,
   83 Cal. App. 4th 523 (2000) .................................................................. 14

iii

TABLES OF CONTENTS AND AUTHORITIES

*Venhaus v. Shultz,*
   155 Cal. App. 4th 1072 (2007) ........................................................ 12, 15

*W. Mining Council v. Watt,*
   643 F.2d 618 (9th Cir. 1981) ................................................................. 7

*Westside Center Associates v. Safeway Stores 23, Inc.,*
   42 Cal. App. 4th 507 (1996) ............................................................... 16

*Youst v. Longo,* 4
   3 Cal.3d 64 (1987) ....................................................................... 16, 17

**Statutes**

11 U.S.C. § 362(a)(1) ............................................................................ 9

Cal. Code Civ. Proc. § 335.1 ................................................................ 8

Cal. Code Civ. Proc. § 339 .................................................................. 8

**Rules**

Federal Rule of Civil Procedure 8 ............................................... 3, 5, 6

Federal Rule of Civil Procedure 12(b) ......................................... 3, 7, 9

Local Rule 83-3.2 ................................................................................. 5

**Treatises**

Prosser & Keeton, Torts (5th ed. 1984) § 130 ................................... 16

Restatement (Third) Of Agency § 4.01 (2006) ................................... 14

TABLES OF CONTENTS AND AUTHORITIES

## I.    **INTRODUCTION**

On February 24, 2022, the State Bar of California (the "State Bar") learned that certain nonpublic case information related to lawyer disciplinary proceedings—including case number, filing date, case type, case status, and respondent and complaining witness names (the "Case Data")—had been improperly "harvested" from a software portal licensed to the State Bar by Tyler Technologies, Inc. ("Tyler") and posted on a third-party website (the "Alleged Data Breach"). The Alleged Data Breach is the subject of a putative class action that is pending in the Superior Court for the County of Orange as Case No. 30-02022-012500695-CU-AT-CXC (the "State Court Action") and of related proceedings in this District in Case No. 8:22-cv-00983-DFM (the "Federal Court Action," and, collectively with the State Court Action, the "Data Breach Cases"). Plaintiff Lenore Albert originally filed the State Court Action on behalf of a putative class and was counsel of record in that case until she was disbarred by the State Bar effective June 17, 2024. She remains counsel of record in the Federal Court Action pending the resolution of an Order to Show Cause regarding whether she can continue practicing in the Central District of California.

The allegations against Tyler in this case—which Tyler contends are entirely frivolous—fall into two categories. *First*, the 950-paragraph Complaint tells a rambling and, at times, incoherent tale of over a decade of supposed "retaliation" and "harassment" by the State Bar and its employees that culminated in the June 2024 disbarment of Plaintiff Lenore Albert. Although the disciplinary charges that ultimately lead to Ms. Albert's disbarment were initiated well before the Data Breach Cases were filed, Plaintiffs claim that the State Bar disbarred Ms. Albert in retaliation for her filing those cases. And, without alleging a single fact connecting Tyler to her disbarment, Plaintiffs assert that Tyler aided the State Bar in its efforts to disbar Ms. Albert, supposedly to gain some advantage in the Data Breach Cases and interfere with Plaintiffs' other ongoing litigation matters where Ms. Albert was counsel. There not a

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO DISMISS FIRST AMENDED COMPLAINT

1   shred of truth to Plaintiffs' suggestion that Tyler was involved.[2]  There is not one single
2   factual allegation that ties Tyler to any of the State Bar's actions as they relate to Ms.
3   Albert and her status as an attorney in the State of California.[3]  There are no allegations
4   that Tyler had any knowledge of or involvement in Ms. Albert's two prior suspensions.
5   Nor are there allegations suggesting that Tyler was involved in or had knowledge of the
6   April 2022 disciplinary charges that ultimately lead to her disbarment.  Indeed, there
7   are no allegations of any kind establishing any contact between the State Bar and Tyler
8   as it relates to Ms. Albert's disbarment—not one conversation or communication
9   wherein Tyler supposedly encouraged the State Bar to take action against Ms. Albert.
10  These things cannot be alleged because they did not happen.  And, the suggestion that
11  Tyler has somehow benefited by her disbarment is also false.  The Data Breach Cases
12  remain pending, and a hearing on Tyler's demurrer in the State Court Action has been
13  postponed until February 2025.

14      The other Plaintiffs assert even more tenuous claims against Tyler, alleging
15  emotional or financial damages supposedly arising out of Ms. Albert's inability to
16  continue practicing law.  These Plaintiffs cannot even allege that Tyler was aware they
17  existed before this suit was filed, much less that Tyler knew of their relationship to Ms.
18  Albert or undertook any specific act to harm those relationships.[4]  It is not sufficient to
19  simply allege that Tyler was aware Ms. Albert was a lawyer and that she had clients;
20  there must be an allegation that Tyler had actual knowledge of the relationships it
21  supposedly interference with.  Tyler did not.  Put simply, because it contains nothing
22  more than conclusory allegations devoid of any factual support, the Complaint fails to

---

[2] Tyler expressly reserves the right to serve and file a motion pursuant to Federal Rule of Civil Procedure 11, requesting Tyler's attorneys' fees and costs.

[3] To be clear, based on the face of the FAC Tyler believes that the claims against the State Bar also lack merit and should be dismissed, but lacks knowledge of, or insight into, the State Bar's disciplinary procedures generally and against Ms. Albert specifically.

[4] Plaintiff Chad Pratt is a unique exception because he was a non-anonymous class representative in the State Court Action, but Mr. Pratt has indicated that he wishes to dismiss his claims.  (*See* DE 77.)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO DISMISS FIRST AMENDED COMPLAINT

meet the "short and plain statement" pleading standard of Federal Rule of Civil Procedure 8 and fails to state a claim pursuant to Federal Rule of Civil Procedure 12(b).

*Second*, having been rendered ineligible to be class counsel in the Data Breach Cases, Ms. Albert now attempts to bring her own negligence claim related to the Alleged Data Breach. This claim should also be dismissed for several reasons, including the fact that the statute of limitations has run, Ms. Albert cannot allege any damages, and Tyler owed no duty to Ms. Albert as a matter of law. This claim should be dismissed as well.

## II.   **FACTUAL BACKGROUND**

Tyler is a leading provider of technology solutions to schools, courts and other public sector clients at the local, state, and federal level. Among Tyler's many solutions is a suite of software for state courts and clerks, popularly known as "Odyssey." Tyler licensed to the State Bar a public-facing module referred to as the "Odyssey Portal," which enabled certain information to be searched and accessed by the public. (Dkt. 57, ¶276.) When searched, the Odyssey Portal initially returns Case Data similar to a court docket sheet. Pursuant to State Bar Rules of Procedure, certain portions of these records are kept confidential and not intended to be publicly available. (*Id*.)

In October 2021, a third-party decided to make the State Bar's disciplinary records searchable and accessible on a website known as JudyRecords.com. (*Id*., ¶282.) Because of a previously unknown vulnerability in the Odyssey Portal, this third party was able to access certain Case Data that the State Bar otherwise intended to remain confidential. (*Id*.) These records were made available to be searched on JudyRecords.com for approximately four months. (Dkt. 1, ¶386.) Only a small number of the records were actually viewed while they were available on the third-party website.

On March 18, 2022, Ms. Albert, acting as counsel to a putative class, filed a complaint against the State Bar and various Doe Defendants asserting numerous claims based on the Alleged Data Breach. (Dkt. 57, ¶293.) On March 25, 2022, Ms. Albert

3

1    amended the complaint to substitute Tyler for "Doe 1." On April 13, 2022, Ms. Albert

2    amended the complaint again, alleging federal antitrust causes of action, and Tyler

3    timely removed the case to Federal Court. (*See* Timm Decl., Ex. B (C.D. Cal. Case No.

4    8:22-cv-00983), Dkt. 1.)[5] On April 3, 2023, the Federal Court dismissed the federal

5    antitrust claims with prejudice, and thereafter declined to exercise supplemental

6    jurisdiction over the remaining state-law claims. (*Id.*, at Dkt. 130 & 134.) At Ms.

7    Albert's request, the Federal Court remanded the case to State Court on May 3, 2023.

8    (*Id.*, at Dkt. 135.) Defendants in the State Court Action filed demurrers, which were

9    sustained in part on January 12, 2024. Ms. Albert filed a Fourth Amended Complaint

10    in the State Court Action on February 1, 2024. Tyler filed another demurrer on March

11    11, 2024.

12        Ms. Albert originally obtained her license to practice law in California in 2000.

13    (Dkt. 57, ¶26) Her license was suspended by the State Bar in 2018 and again in 2019.

14    (*Id.*, ¶32; Dkt. 73-12, pp. 3-5). On April 29, 2022—before Ms. Albert filed the State

15    Court Action regarding the Alleged Data Breach—the Office of Chief Trial Counsel

16    ("OCTC") served a Notice of Disciplinary Charges ("NDC") against Ms. Albert related

17    to a pending investigation. (*Id.*, p. 2). The State Bar amended the NDC twice and, on

18    April 3, 2023, an OCTC hearing judge recommended that Ms. Albert's license be

19    suspended a third time. (*Id.*, p. 3) Following an appeal by both Ms. Albert and OCTC,

20    on March 11, 2024, the Review Department of the State Bar issued an Opinion and

21    Order recommending that Ms. Albert be disbarred. (Dkt. 73-12.) Ms. Albert filed a

22    petition for review in the California Supreme Court consistent with Rule 9.13 of the

23    California Rules of Court. On March 14, 2024, the Central District of California issued

24    an Order to Show Cause ("OSC") as to why Ms. Albert should not be suspended from

25

26

---

27    [5] "On a motion to dismiss, [the Court] may consider materials incorporated into the complaint or matters of public record." *Coto Settlement v. Eisenberg*, 593 F.3d 1031,

28    1038 (9th Cir. 2010). Each of the exhibits to the Timm Declaration are judicial records, are publicly available, and pertain to cases related to this one.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO DISMISS FIRST AMENDED COMPLAINT

1    the practice of law in the Central District pursuant to Local Rule 83-3.2.  (*See* Timm

2    Decl., Ex. A (C.D. Cal. Case No. 2:24-ad-00002-PSG), Dkt. 1.)

3              On March 20, 2024, Ms. Albert filed an *ex parte* application in the closed Federal

4    Court Action, seeking to vacate the federal court's May 2023 remand order—which she

5    had requested—so that the class action case could proceed in Federal Court, where she

6    believed she was still permitted to practice law.  (*See* Timm Decl., Ex. B, Dkt. 138.)

7    The Federal Court denied the *ex parte* application on March 21, 2024.  (*Id*. at Dkt. 143.)

8              Ms. Albert then filed a noticed motion seeking the same relief in the Federal

9    Court Action on April 2, 2024.  (*Id*. at Dkt. 144.)  Defendants subsequently filed a joint

10   *ex parte* application to continue the hearing and briefing schedule regarding that motion

11   until the OSC was decided.  (*Id*. at Dkt. 149.)  No final order on the OSC has been

12   issued. (*See, generally*, Timm Decl., Ex. A.)

13             On June 17, 2024, the California Supreme Court denied Ms. Albert's Petition for

14   Review and ordered her disbarred.  (*See* Case No. 8:22-cv-00983-DFM, at DE 156.)

15   On June 28, 2024, the State Court issued an order continuing a hearing on Defendants'

16   demurrers to the Fourth Amended Complaint and setting a status conference for October

17   18, 2024.  (Timm Decl., ¶ 6, Ex. C.)

18             On September 16, 2024, Plaintiffs filed this action.  On October 18, 2024, the

19   State Court further continued a hearing on the demurrers until February 7, 2025, in an

20   effort to give Plaintiffs an additional opportunity to find new class counsel.  (Timm

21   Decl., ¶ 7, Ex. D.)

22   **III.   <u>ARGUMENT</u>**

23        **A.    The SAC Fails to Satisfy the Requirements of Rule 8**

24             Pursuant to Rule 8, a complaint must contain "a short and plain statement" of the

25   claims showing that the plaintiff "is entitled to relief."  Fed. R. Civ. Proc. 8(a)(2).  "Each

26   allegation must be 'simple, concise, and direct.'"  *California Coal. for Fams. & Child.*

27   *v. San Diego Cnty. Bar Ass'n*, 657 F. App'x 675, 677–78 (9th Cir. 2016), *quoting* Fed.

28   R. Civ. P. 8(d)(1).  This requirement is intended to ensure that a complaint "give[s] the

1    defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell*
2    *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation
3    omitted).  Failure to satisfy Rule 8 can justify dismissal, especially where—like here—
4    a complaint is "verbose, confusing and almost entirely conclusory." *Nevijel v. North*
5    *Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir. 1981); *see also Cafasso v. Gen.*
6    *Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011) (noting that dismissal is
7    appropriate where a complaint was "needlessly long" and "highly repetitious, or
8    confused, or consisted of incomprehensible rambling") (internal quotation marks and
9    citation omitted); *McHenry v. Renne*, 84 F.3d 1172, 1179–80 (9th Cir.1996) (affirming
10   a dismissal because "[p]rolix, confusing complaints . . . impose unfair burdens on
11   litigants and judges").

12        Here, the Complaint contains 129 pages and 950 paragraphs of allegations
13   purporting to relate to Ms. Albert's longstanding issues with the State Bar.  (*See*
14   *generally*, Dkt. 57.)   In addition to their verbosity, the allegations are confusing,
15   repetitious, needlessly long, incomprehensible, and entirely conclusory.  Despite its
16   length, the Complaint fails to articulate any coherent theory of liability against Tyler.
17   The crux of the Complaint is the suggestion that Tyler assisted the State Bar in
18   retaliating against Ms. Albert for having filed the Data Breach Cases by disbarring her
19   from the practice of law.  That disbarment supposedly then had a domino effect
20   impacting Ms. Albert's attorney-client relationships with the other Plaintiffs.  As noted,
21   there are no specific factual allegations to support this fanciful narrative.  No factual
22   allegations support the conclusion that Tyler was somehow involved in Ms. Albert's
23   disbarment.  Nor is there any factual support for the conclusory suggestion that Tyler
24   was aware of the other Plaintiffs and interfered with their relationships with Ms. Albert.
25   Instead, the Complaint includes lengthy allegations about Ms. Albert's disciplinary
26   history with the State Bar and other irrelevant and wholly speculative assertions.
27   Because the Complaint fails to satisfy Rule 8's requirement of a "short and plain
28   statement" of the claim, the claims against Tyler should be dismissed.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO DISMISS FIRST AMENDED COMPLAINT

## B.   The Plaintiffs Fail to Properly Allege Any Claim Against Tyler

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp*, 550 U.S. at 570.  For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  However, a court is not required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'"  *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).   Mere conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss. *Id*., *quoting Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Complaint fails to state a claim against Tyler upon which relief can be granted.  The Complaint purports to assert three causes of action against Tyler:  Count 5 (Negligence arising from the Alleged Data Breach on behalf of Ms. Albert only); Count 10 (Negligent Interference with a Prospective Economic Advantage); and Count 11 (Intentional Interference with a Prospective Economic Advantage).

### i.   Ms. Albert's Data Breach Claim

In Count 5, Ms. Albert separately asserts a claim for negligence based on the Alleged Data Breach.  (Dkt. 57, ¶¶526-546.)  In order to state a negligence claim, a plaintiff must allege the following elements: "(1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of the duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages)." *Corales v. Bennet*, 567 F.3d 554, 572 (9th Cir. 2009),

7

*citing McGarry v. Sax,* 158 Cal. App. 4th 983, 994 (2008). Ms. Albert's claim should be dismissed for numerous reasons.

*First,* Ms. Albert's individual negligence claim based on the Alleged Data Breach is barred by the statute of limitations. The statute of limitations for general negligence claims is two years. *See Martinez v. Citimortgage, Inc.*, No. CV15-9737 PSG (MRWX), 2016 WL 7469867, at *3 (C.D. Cal. May 19, 2016), *citing* Cal. Code Civ. Proc. §§ 335.1, 339; *E–Fab, Inc. v. Accountants, Inc. Services*, 153 Cal. App. 4th 1308, 1316 (2007). Here, there is no question that Ms. Albert was aware of the Alleged Data Breach by at least March 18, 2022, when she filed the State Court Action on behalf of the putative class. And, Ms. Albert was aware by at least May 18, 2022, that her own Case Data was involved in the Alleged Data Breach. (Dkt. 1, ¶94.)

Ms. Albert was also aware that she could not act as both counsel to the class and assert her own claims as a member of the class. *See, e.g., Apple Computer, Inc. v. Superior Ct.*, 126 Cal. App. 4th 1253, 1264 (2005) (gathering authorities regarding the conflict presented by dual interests). Indeed, in drafting the State Court complaint, Ms. Albert expressly excluded class counsel from the definition of the class. (*See* Timm Decl., Ex. E at ¶144.) Ms. Albert could have opted to pursue her claims as part of the class and forego her role as counsel or she could have separately and timely filed her claims in a separate proceeding. She chose not to do so and now the statute of limitations on her individual claims has expired.

Contrary to the allegations in the FAC (*see* DE 57, ¶404), the statute of limitations on Ms. Albert's individual negligence-based claims was not tolled based on the pendency of the class action. *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 353-53 (1983), *quoting American Pipe & Constr. Co. v. Utah,* 414 U.S. 538 (1974) ("[T]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class *who would have been parties had the suit been permitted to continue as a class action*.") (emphasis added). As class counsel, Ms.

1    Albert would not have been a member of the class had it continued as a class action and
2    she chose not to pursue her own individual claims during the limitations period.

3         Nor did Ms. Albert's personal bankruptcy toll the limitations period.  California
4    authority recognizes, based on the plain language of section 11 U.S.C. § 362(a)(1), that
5    "the automatic stay is inapplicable to superior court actions *initiated by* the debtor."
6    *Shah v. Glendale Fed. Bank*, 44 Cal. App. 4th 1371, 1375 (1996) (italics in original);
7    *see also Shorr v. Kind*, 1 Cal. App. 4th 249, 254–255 (1991); *Lauriton v. Carnation*
8    *Co.*, 215 Cal.App.3d 161, 164 (1989) ("a debtor's cause of action is not tolled by the
9    filing of a bankruptcy petition"); *Danielson v. ITT Industrial Credit Co.*, 199 Cal. App.
10   3d 645, 652 (1988) ("nothing in the Bankruptcy Act tolls a debtor's cause of action").

11        *Second,* Ms. Albert has not sufficiently alleged that Tyler owed a duty directly to
12   her.  Instead, the FAC only superficially alleges the following conclusory statement:
13   "Tyler Technologies as the software developer…owed Plaintiff, Lenore Albert a duty
14   to implement and maintain adequate security measures to safeguard Plaintiff, Lenore
15   Albert's personal information and existence of State Bar investigations consistent with
16   public policy, State Bar policies, statutes, and California privacy laws." (Dkt. 57, ¶533.)
17   This conclusory and generalized allegation of a duty is insufficient to state a claim
18   pursuant to Rule 12(b)(6).  Ms. Albert has not and cannot allege that a duty arose out of
19   any pre-existing relationship she had with Tyler, that Tyler expressly assumed a duty to
20   her, or that such a duty was imposed by law on Tyler.

21        *Third*, Ms. Albert's allegations of damages are purely conclusory.  "It is
22   fundamental that a negligent act is not actionable unless it results in injury to another."
23   *Fields v. Napa Milling Co.*, 164 Cal. App. 2d 442, 447 (1958).  "California courts have
24   indicated that speculative harm or the mere threat of future harm is insufficient to
25   constitute actual loss."  *Corona v. Sony Pictures Entertainment, Inc.*, No. 14-CV-
26   09600-RGK, 2015 WL 3916744, at *3 (C.D. Cal., June 15, 2015), *citing Jordache*
27   *Enters., Inc. v. Brobeck, Pheger & Harrison,* 18 Cal.4th 739, 743 (1998).  Here, Ms.
28   Albert has alleged in a purely conclusory way that she suffered "anxiety" and

"emotional distress." (Dkt. 57, ¶541.)  These allegations are so bare as to be woefully insufficient.  *See, e.g., Holly v. Alta Newport Hosp., Inc.*, No. 2:19-cv-07496-ODW (MRWx), 2020 WL 1853308, at *6 (C.D. Cal. Apr. 10, 2020) (recognizing that, "although actual damages can include emotional distress, a plaintiff must support [their] claim for pain and suffering with something more than [their] own conclusory allegations, such as specific claims of genuine injury").  Ms. Albert's allegations are also impermissibly speculative as to future damages.  Ms. Albert speculates that she "will forever be the target of her adversaries" and that she will need to monitor the "dark web" to protect her reputation.  (DE 57, ¶¶544, 545.)  Not only is this speculative, but Ms. Albert fails to allege any form of proximate cause or relationship between these damages and the Alleged Data Breach.  The Alleged Data Breach involved Case Data, akin to a docket sheet that listed name, case number and filing date.  The Alleged Data Breach did not disclose Ms. Albert's phone number, email address, credit card or other personal information.  Ms. Albert's concerns about "phishing scams and spam" and money spent on "Experian Credit monitoring" have no logical relationship to any of the Case Data allegedly accessed during the Alleged Data Breach.  To properly allege damages arising from the Alleged Data Breach, Ms. Albert would need to assert that she suffered some actual monetary or reputational damage from the disclosure of her Case Data.  Even two-and-a-half years after the alleged Data Breach, Ms. Albert cannot make such an allegation.

ii.     **Plaintiffs' Interference With Prospective Economic Advantage Claims Also Warrant Dismissal.**

In Counts 10 and 11, Plaintiffs assert either intentional or negligent interference with prospective economic advantage claims.  (*See* Dkt. 57, ¶¶683-714.)  These claims are all premised on the idea that Tyler was aware of Ms. Albert's prospective economic relationships with the various other Plaintiffs and took actions to disbar Ms. Albert in order to damage those relationships.  Again, however, these counts simply recite the

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

1   elements of the causes of action without any supporting factual allegations that establish
2   Tyler's involvement.

3       For an intentional interference with prospective economic advantage claim,
4   Plaintiffs must plead and prove: (1) an economic relationship between the plaintiff and
5   some third party, with the probability of future economic benefit to the plaintiff; (2) the
6   defendant's knowledge of the relationship; (3) intentional acts on the part of the
7   defendant designed to disrupt the relationship; (4) actual disruption of the relationship;
8   and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.
9   *Golden Eagle Land Inv., L.P. v. Rancho Santa Fe Assn.*, 19 Cal. App. 5th 399, 429
10  (2018).

11      Moreover, the California Supreme Court has made clear that, while intentionally
12  interfering with an existing contract is "a wrong in and of itself," intentionally
13  interfering with a plaintiff's prospective economic advantage is not. *Korea Supply Co.*
14  *v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1158–59 (2003), *quoting Quelimane*
15  *Company, Inc. v. Stewart Title Guaranty Company*, 19 Cal.4th 26, 77 (1998). Thus, to
16  establish a claim for interference with prospective economic advantage, a plaintiff must
17  plead that the defendant engaged in an independently wrongful act. *Korea Supply*, 29
18  Cal. 4th at 1158-59, *citing Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal.4th
19  376 (1995). "[A]n act is independently wrongful if it is unlawful, that is, if it is
20  proscribed by some constitutional, statutory, regulatory, common law, or other
21  determinable legal standard." *Korea Supply*, 29 Cal. 4th at 1158-59 (citations omitted).
22      The elements of negligent interference with prospective economic advantage are
23  similar: (1) an economic relationship existed between the plaintiff and a third party
24  which contained a reasonably probable future economic benefit or advantage to
25  plaintiff, (2) the defendant knew of the existence of the relationship and was aware or
26  should have been aware that if it did not act with due care its action would interfere with
27  this relationship and cause plaintiff to lose in whole or in part the probable future
28  economic benefit or advantage of the relationship, (3) the defendant was negligent, and

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO DISMISS FIRST AMENDED COMPLAINT

(4) such negligence caused damage to plaintiff in that the relationship was actually interfered with or disrupted and plaintiff lost in whole or in part the economic benefit or advantage reasonably expected from the relationship. *Venhaus v. Shultz*, 155 Cal. App. 4th 1072, 1077–78 (2007); *Nolan Miller Incorporation v. Hees,* No. 2:17-CV-07355-ODW-PLA, 2018 WL 3533392, at *7 (C.D. Cal. July 20, 2018).

Plaintiffs have not properly plead the elements of either claim. *First*, as discussed above, the Complaint does not include any non-conclusory allegations that Tyler was involved, either intentionally or negligently, in conduct that would disrupt these relationships. This is because there are no facts to be alleged—Tyler had no involvement whatsoever in Ms. Albert's disbarment. At the meet and confer, Plaintiffs suggested that Tyler's involvement in the Alleged Data Breach created a "domino effect" that resulted in Ms. Albert's disbarment and the other Plaintiffs' resulting losses. However, Plaintiffs' Complaint includes no such allegation and fails to connect the "dominos," *i.e.*, there are no factual allegations establishing that the Alleged Data Breach had any causal connection to Ms. Albert's disbarment or to the supposed damages suffered by Plaintiffs.

The closest Plaintiffs come to alleging any sort of specific conduct by Tyler is found in paragraphs 407-431 of the Complaint. Here, Plaintiffs allege—again in an entirely conclusory manner—that Tyler and the State Bar were in an "agency relationship, a conspiracy with each other acting in concert with each other by having Plaintiff Lenore Albert suspended or disbarred in order to derail the State Bar data breach litigation." (Dkt. 57, ¶430.) Alternatively, Plaintiffs allege that Tyler "ratified or knowingly received a benefit from the acts or omissions of the State Bar" and is, thus, liable. (Dkt. 57, ¶431). These conclusory allegations are insufficient both factually and legally.[6]

---

[6] Plaintiffs' allegation that Tyler's Chief Legal Officer, Abigail Diaz, "authorized permitted, let, consented, directed or adopted and approved, acquiesced in or ratified using the California State Bar disciplinary process to gain a benefit or advantage in the data breach case" and that Ms. Diaz acted with "evil intent" is especially frivolous. (Dkt. 57, ¶¶391, 714). This allegation is completely false, and Plaintiffs cannot point

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO DISMISS FIRST AMENDED COMPLAINT

1   Factually, the suggestion that Tyler colluded with the State Bar appears to
2   emanate from two events that occurred during the course of the Data Breach Cases.  The
3   first is the filing of a joint case management statement informing the State Court of the
4   April 3, 2023 recommendation of the hearing judge that Ms. Albert be suspended.  (Dkt.
5   57, ¶414).  The second is Tyler's supposed delay in producing documents. (Dkt. 57, ¶¶
6   419, 420, 424).[7]  Neither of these allegations support a conclusion that Tyler was acting
7   in concert with the State Bar in connection with the ultimate decision to disbar Ms.
8   Albert.  In fact, the suggestion that Tyler delayed discovery in the State Court Action is
9   false.  The Complaint itself verifies that Tyler produced discovery in the State Court
10  Action on March 8, 2024—before the decision recommending disbarment occurred.
11  (Dkt. 57, ¶¶423-424).  Plaintiffs have not (and cannot) allege (i) any involvement by
12  Tyler in any of the events giving rise to Ms. Albert's various disciplinary complaints,
13  suspensions or disbarment; (ii) any discussions or communications of any kind between
14  the State Bar and Tyler regarding the disbarment proceedings; (iii) any knowledge by
15  Tyler of Ms. Albert's disbarment prior to the time it occurred; or (iv) any involvement
16  in the State Bar's request to delay its own production in the State Court Action.

17  The conclusory allegations that Tyler was acting as the State Bar's agent or that
18  it ratified the State Bar's actions are also legally flawed.  The essential elements of an
19  agency relationship are: (1) that the agent or apparent agent holds power to alter legal
20  relations between the principal and third persons and between the principal and himself;
21  (2) that the agent is a fiduciary with respect to matters within the scope of the agency;
22  and (3) that the principal has right to control the conduct of the agent with respect to

23
24  to one shred of evidence to support this unnecessarily personal attack.  Nor have
    Plaintiffs alleged any *facts* to support these conclusory and absurd statements.
25  Moreover, Ms. Albert has already sought discovery (and documents) from Tyler in the
    State Court Action pertaining to the Data Breach, including communications between
26  Tyler and the State Bar.  Tyler has produced such documents in March 2024.  Those
    documents disprove this absurd allegations in the FAC.
27  [7] To the extent that Plaintiffs' interference claims are premised solely on these two
    actions taken in connection with Tyler's litigation conduct, the claims may also be
28  barred by California's anti-SLAPP statute, Cal. Code of Civ. P. § 425.16.  Tyler does
    not waive its right to pursue an appropriate motion in that regard.

13

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO DISMISS FIRST AMENDED COMPLAINT

1    matters entrusted to him.  *Imageline, Inc. v. CafePress.com, Inc.*, No. CV 10-9794 PSG

2    MANX, 2011 WL 1322525, at *4 (C.D. Cal. Apr. 6, 2011), *citing Garlock Sealing*

3    *Technologies LLC v. NAK Sealing Technologies Corp.,* 148 Cal. App. 4th 937, 965

4    (2007)).  To sufficiently plead an agency relationship, a plaintiff must allege facts

5    demonstrating the principal's control over its agent.  *Imageline*, 2011 WL 1322525, at

6    *4, *citing Sonora Diamond Corp. v. Superior Court,* 83 Cal. App. 4th 523, 541 (2000).

7    In fact, "[c]ontrol is the key characteristic." *Id.*  Not only have Plaintiffs failed to allege

8    any of these elements, as a matter of law, Tyler, a publicly-traded, Fortune 500 company

9    that provides software and services to public entities, cannot be said to be under the

10   control of the State Bar.  The fact that Tyler and the State Bar were co-defendants in the

11   Data Breach Cases does not alter that conclusion.

12          Similarly, Plaintiffs cannot plead a ratification theory.  "Ratification is the

13   affirmance of a prior act done by another, whereby the act is given effect as if done by

14   an agent acting with actual authority." Restatement (Third) Of Agency § 4.01 (2006).[8]

15   A person ratifies an act by manifesting assent that the act shall affect the person's legal

16   relations, or by conduct that justifies a reasonable assumption that the person so

17   consents.  *See Canilao v. City Com. Invs., LLC*, 613 F. Supp. 3d 1236, 1249 (N.D. Cal.

18   2022).  In the Ninth Circuit, ratification presupposes an existing agency relationship.

19   *See Batzel v. Smith*, 333 F.3d 1018, 1036 (9th Cir. 2003) ("a principal agent relationship

20   is…a requisite, and ratification can have no meaning without it.").  In the absence of

21   allegations to establish an agency relationship between Tyler and the State Bar,

22   Plaintiffs cannot establish a ratification theory.  *Canilao,* 613 F. Supp. 3d at 1249.

23          Simply put, the Complaint fails to sufficiently allege that Tyler undertook any

24   intentional or negligent actions that disrupted Plaintiffs' existing relationships.

25

26   _____

27   [8] Although Plaintiffs' purport to plead ratification in the alternative, it is worth noting that the theory that Tyler was both acting as an *agent* for the State Bar and was also acting as the *principal* ratifying the State Bar's actions is entirely inconsistent and

28   underscores the fact that the Complaint does not include any allegations to establish that either was acting as the agent of the other.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO DISMISS FIRST AMENDED COMPLAINT

1    Certainly, the Complaint does not allege an independently wrongful, unlawful act that
2    would give rise to an intentional interference.

3         *Second*, the Complaint fails to allege any supporting factual allegations to
4    establish that Tyler had knowledge of any probable future economic benefits. Again,
5    utilizing conclusory allegations without any factual support, Plaintiffs allege that Tyler
6    must have been aware of Plaintiff Westmoreland's attorney-client relationship with Ms.
7    Albert because Mr. Westmoreland was a member of the putative class. (Dkt. 57, ¶685).
8    Plaintiffs have not alleged that Tyler had knowledge of identity of the members of the
9    class who were not named as class representatives. Presumably, if that information had
10   been disclosed in the Data Breach Cases, Ms. Albert would have known about it as
11   counsel and alleged that to be the case.[9] It was not, and there is no basis to allege that
12   Tyler was aware of Mr. Westmoreland's existence, much less his client relationship
13   with Ms. Albert.

14        With regard to the other four Plaintiffs, the Complaint simply alleges that Tyler
15   "knew Plaintiff was an attorney that represented others" and "should have known that
16   these relationships would be disrupted." (Dkt. 57, ¶687). This is not sufficient. Both
17   intentional and negligent interference require actual knowledge of the prospective
18   economic benefit. *Golden Eagle*, 19 Cal. App. 5th at 429; *Venhaus*, 155 Cal. App. 4th
19   at 1077–78; *see also Santa Fe Properties, LP v. Source Bioscience, Inc.*, No.
20   CV2010727JFWPVCX, 2021 WL 6104156, at *2 (C.D. Cal. Feb. 10, 2021) ("A claim
21   for negligent interference with prospective economic advantage has the same elements
22   as an intentional interference claim except that, instead of an intentional act, the third
23   element requires that the defendant had *knowledge* that the relationship would be
24   disrupted if the defendant failed to act with reasonable care and that the defendant failed
25   to act with reasonable care.") (emphasis added).

26

27   _____
28   [9] Ms. Albert did eventually disclose to Tyler and the State Bar the identity of the
     plaintiffs in the Data Breach Cases who were proceeding under pseudonyms, but none
     of them were Mr. Westmoreland.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO DISMISS FIRST AMENDED COMPLAINT

*Third*, Plaintiffs failed to adequately allege a probable economic benefit that was the subject of any interference.  To demonstrate the required economic relationship to allege either an intentional or negligent interference with prospective economic advantage claim, "'it must be reasonably probable the prospective economic advantage would have been realized but for defendant's interference.'" *Rheumatology Diagnostics Lab, Inc. v. Aetna, Inc.*, 12-cv-05847-WHO, 2014 WL 524076, *14 (N.D. Cal. Feb. 6, 2014), *quoting Youst v. Longo*, 43 Cal.3d 64, 71 (1987). "Any alleged relationship cannot be based upon 'overly speculative expectancies.'"  *Id.*; *see also Blank v. Kirwan*, 39 Cal.3d 311, 331 (1985); *Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*, 2005 WL 832398 at *9 (N.D. Cal. Mar. 30, 2005) ("Allegations that amount to a mere hope for an economic relationship and a desire for future benefit are inadequate to satisfy the pleading requirements" for tortious interference with prospective economic advantage) (internal quotation and citation omitted)

In *Youst*, the court held that the outcome of a sporting contest was too speculative to support a tortious interference claim. 43 Cal.3d at 74. The trial court sustained the defendant's demurrer without leave to amend. On appeal, the ruling was affirmed, with the court noting that to be "probable" it must be "*possible to estimate with some fair amount of success both the value of what has been lost and the likelihood that the plaintiff would have received it if the defendant had not interfered.*" *Id*. at p. 75, *quoting* Prosser & Keeton, Torts (5th ed. 1984) § 130, p. 1006.  Thus, the tort "traditionally has not protected speculative expectancies." *Youst*, at pp. 74–75; *see also Westside Center Associates v. Safeway Stores 23, Inc*., 42 Cal. App. 4th 507, 523 (1996) (noting that a plaintiff must establish "that it is reasonably probable the plaintiff would have received the expected benefit had it not been for the defendant's interference").

Here, even if you give Plaintiffs a strong benefit of the doubt, their allegations are nothing more than speculative assertions of economic benefit that might have resulted if Ms. Albert had not been disbarred.  In this regard, it is useful to examine each Plaintiffs' "probable economic benefit" individually.   Mr. Ocon's is the most

16

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

1   attenuated. He alleges that he was forced to shut down his business in December

2   2022—well prior to Ms. Albert's disbarment. (Dkt. 57, ¶109). Mr. Ocon asserts that

3   he "lost sponsorship investments" from "Panasonic, Canon, and Sinclair Broadcasting

4   Group" (Dkt. 57, ¶111), but does not make any factual allegations to establish that those

5   economic benefits were anything more than mere speculation. Mr. Ocon's "[a]lleged

6   relationships with 'potential customers' are insufficient because they are nothing more

7   than 'speculative economic relationships.'" *Rheumatology Diagnostics*, 2014 WL

8   524076 at *14, *quoting Youst*, 43 Cal.3d at 71.

9        Mr. Westmoreland alleges that he had a probable economic benefit based on his

10   attorney-client relationship with Ms. Albert in the Data Breach Cases. (Dkt. 57, ¶¶87-

11   99). Mr. Westmoreland's right to recovery in that case, however, is not a certainty and

12   amounts to nothing more than a speculative expectation that he might be entitled to a

13   recovery at some later point.[10]

14        Ms. Marasco alleges that she had a case that was set to go to trial shortly after

15   Ms. Albert's disbarment and that she was "forced" to enter a "quick settlement" instead

16   of pursuing her claims in court. (Dkt. 57, ¶¶132-34). She "believes" she would have

17   received "much more from a jury." (Dkt. 57, ¶135). This is the very definition of a

18   speculative economic benefit and also suffers from the obvious issue that it was Ms.

19   Marasco who chose to settle. She cannot credibly allege Tyler "forced" her to do so.

20        Mr. McMahon and Mr. Tran similarly allege that they had existing attorney-client

21   relationships with Ms. Albert that were impacted by her disbarment. (Dkt. 57, ¶146

22   (alleging the Mr. Tran "lost bargaining power" in his case when he "lost his attorney by

23   losing the expected reasonable attorney fee award"), ¶163 (alleging that Mr. McMahon

24   "faces the risk of losing his case without counsel"). Again, the impact of counsel

25

26   [10] Even if Mr. Westmoreland's expectation of a recovery in litigation were not

27 speculative, Ms. Albert's disbarment has not impacted his ability to pursue his claim on
his individual behalf, as he appears to be doing in the State Court Action. Thus, his
economic benefit has not been disrupted at all. To the extent that Plaintiffs are

28 suggesting that Mr. Westmoreland can expect to recover less in the Data Breach Cases
because he will not be represented by Ms. Albert, that is also entirely speculative.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO DISMISS FIRST AMENDED COMPLAINT

withdrawing from a case on the outcome of litigation is entirely speculative and the ultimate result of such litigation is contingent on many variables.  These allegations do not constitute a sufficiently concrete economic benefit to plead a claim for interference.

Finally, to the extent the interference claims are pled on behalf of Ms. Albert herself, her expectations of an economic benefit—in the form of contingent attorneys' fees (Dkt. 57, ¶86)—is also too speculative to qualify as a "probable economic benefit." There is no sufficient certainty that these fees would actually be recovered to support the assert that they were "probable economic benefits."

## IV.   <u>CONCLUSION</u>

In light of the foregoing, Tyler respectfully requests that the Court grant this motion, dismiss Plaintiffs claims against Tyler, with prejudice and without leave to amend, and grant Tyler such other and further relief to which it may be entitled.


**K&L GATES LLP**

Dated:  November 18, 2024          By: */s/ Zachary T. Timm*
                                             Beth W. Petronio
                                             Christina N. Goodrich
                                             Zachary T. Timm

                                             Attorneys for Defendant
                                             TYLER TECHNOLOGIES, INC.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

# CERTIFICATE OF WORD COUNT

The undersigned, counsel of record for Defendant Tyler Technologies, Inc., certifies that this brief contains 6,388 words, which complies with the word limit of L.R. 11-6.1.

/s/Zachary T. Timm
Zachary T. Timm

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT